# TUOHY *v.* TRAIL.

EVIDENCE; WITNESSES; PARENT AND CHILD; PRESUMPTIONS; STATUTE OF LIMITATIONS.

1. In an action by a daughter against the administrator of her deceased father to recover for services performed for the decedent during his lifetime, where the defense is not that the services were not rendered, but that there was no agreement or understanding that the plaintiff was to be compensated therefor, it is competent for the plaintiff to testify as to the rendition of the services and the value thereof, but not as to any contract or understanding with her father as to compensation; *construing* Sec. 858, R. S. U. S.

2. In the absence of proof to show that a deceased father emancipated his daughter before she attained the age of twenty-one years, and agreed to pay her for her services rendered prior thereto, she cannot recover compensation from his administrator for services so performed, and no presumption can be indulged in favor of the claim in such a case.

3. Where a daughter performs personal services for her father while living with him after she attains twenty-one years of age, the presumption of law is that the parties do not contemplate a payment of wages for services on the one hand, nor a claim for board or lodging on the other, but this presumption may be rebutted; and in an action by a daughter against the administrator of her deceased father to recover for such services, where it is shown that meritorious services were rendered, declarations of the decedent of his purpose and intention to provide for his daughter, and to save her from want, and of his great desire to keep her with him, afford proof which is proper to be submitted to the jury for their consideration.

4. Where a parent agrees to compensate his daughter by his will for her services, and no compensation is made, an action by her will lie against his administrator to recover for such services; and the claim will not be barred by limitations until after the lapse of the statutory period after administration granted.

5. In reversing a judgment for the defendant in an action by a daughter against her father's administrator for services rendered the dece-

dent, and directing a new trial, this court, because of the special circumstances, directed the costs of the appeal to be paid out of the estate.

No. 1088.  Submitted October 10, 1901.  Decided December 3, 1901.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia upon a verdict in an action against an administrator to recover for personal services alleged to have been rendered his decedent.                                    *Reversed.*

The COURT in its opinion stated the case as follows:

This action was instituted by a widowed daughter against the administrator of her deceased father, to recover for services rendered to the father in his lifetime.   The action was brought on the 18th day of August, 1901, and the father died on the 6th day of August, 1898.   The action is in *assumpsit* and is founded upon a *quantum meruit.*   The pleas are *non-assumpsit,* statute of limitations, and payment, and upon which issues were joined.

The deceased father left surviving him three children, two sons, and a daughter, the plaintiff, who attained the age of 18 years in May, 1875, and was married in February, 1888.   She had two children, and her husband died in October, 1892.   She lived with her father, rendering service from a time prior to attaining the age of eighteen years, to the time of her marriage.   Her mother was blind and helpless, and died in 1882, and the plaintiff was the only person to do all the work in and about the home of the family, until she was married.

The bill of particulars of the claim for which the plaintiff sues, as stated in the record, is for services, as housekeeper and general servant, rendered to the deceased in his lifetime, from May, 1875, to February, 1888, 12 years and 9 months, and also from March 1 to December 1, 1893, making total time 162 months, at $12 per month, in addition to board, lodging, and partial use of home place during the time, making a total sum of $1,944.   From this is deducted the sum

of $705, for money paid by the deceased in his lifetime, in part support of the two infant children of the plaintiff.

It is shown by the proof in the record, that the deceased, Thomas Tuohy, purchased, in 1871, a small parcel of land, consisting of about 26 acres, situated near Cabin John, in Maryland, paying therefor between $500 and $600, and built a small house thereon, at a cost of about $500, which was completed in 1882. That from the time of his purchase of this land he lived thereon with his family, consisting of his invalid wife and his three children. That the occupation of Tuohy, the father, was that of a laborer upon public works, at day's wages. That the eldest son, Dennis, pursued the same occupation, but sometimes worked at home on the little farm and left home in 1876, when 22 years of age. That soon after the death of the mother, in 1882, the other son, William, then of full age, left his father, and thereafter rendered him no service. That the plaintiff from the time she was able to work until February, 1888, performed all the domestic work about the home, and sometimes having to do the menial outdoor work about the place; that the work performed by her included cooking, washing, milking the cows, making butter, attending to the poultry, etc. That she was permitted to sell the chickens, eggs, and butter, and apply the proceeds to the use of the family, and what was not necessary for that purpose she applied to the supply of clothing for herself. It was shown in proof that her services were worth from $10 to $15 per month.

It was also shown in proof that the plaintiff was married to one Trail in February, 1888, and thereupon the intestate leased to his son-in-law the farm from March 1, 1888, for five years, under the term of which lease the intestate was to be boarded and lodged by the tenant in the house on the premises. That said Trail died in October, 1892, and the plaintiff, with her two infant children, continued to live on the place with her father until December 1, 1893, when she left the place. That thereafter, until June, 1894, the intestate continued to live on said premises, at which latter date he sold the same for $6,000, and thereafter lived at the

6

establishment of the "Little Sisters of the Poor," a charitable institution in the city of Washington, until his death in August, 1898.

In order to establish the fact of the intention of the intestate to compensate his daughter for her services, there was proof given on the part of the plaintiff, of declarations made by the intestate, at various times and occasions, to the effect, that while he was in his right mind he would not forget his daughter; that, on another occasion before the marriage of his daughter, he tried to borrow $25 to give to her; and on another occasion before her marriage, but when he was drinking, he told one of the witnesses that his daughter would be well cared for when he was gone. And after his daughter had left him, but before he had sold the place, he said to another person that he intended to provide for his daughter after his death, and give her the greater part of his property. After he sold his property, and after the plaintiff had ceased to render service, in various conversations and talks with different people, he said that he would do more for his daughter than for either of his sons; that he would do all he could for her and her children, and would not see them want for anything; that he would provide for her and no law would break his will; that she and her children would get the best of what he had when he died; and when he was displeased with his daughter, because she would not return and keep house for him, he said he would break his will; and at another time he said that he would leave his money to his Trail grandchildren, and not to his sons. These declarations were all of a casual character, made at different times and to different persons, and under various circumstances, and none of them were made to or in the presence of the plaintiff; and none of them point to or indicate a purpose to pay the daughter for services rendered prior to the time when she attained the age of 21 years, if, by fair and reasonable construction, they can be supposed to furnish evidence of an intention to pay her wages for services rendered after that age. The intestate paid for a considerable time money for the support of his grandchildren, the two infant children of his daughter, but

the money was not paid to the daughter as upon account, but was paid by arrangement with and to third parties, and therefore furnishes no evidence of an existing obligation to the daughter.

In the course of the trial the plaintiff herself became a witness in her own behalf, to prove the nature and extent of the services rendered, and the value thereof, but not to prove the contract or understanding with her father under which the services were performed. This offer on her part was objected to by the defendant, upon the ground that the plaintiff was incompetent as a witness under the statute. But the objection was overruled by the court, and the plaintiff was allowed to testify, according to the offer made on her behalf. The defendant excepted; and offered no evidence, but rested the case upon the evidence produced by the plaintiff. The defendant, thereupon, among several other prayers for instruction, requested that the jury be directed to find for the defendant, because there was no sufficient evidence to support the claim of the plaintiff. This request was refused by the court, as were several other prayers offered by the defendant; to which rulings the defendant excepted. The court granted three prayers on the part of the plaintiff, to the granting of which the defendant excepted, and also excepted to certain parts of the general charge of the court to the jury.

*Mr. Arthur Peter* and *Mr. E. C. Peter* for the appellant.

*Mr. A. A. Birney* and *Mr. Joseph J. Waters* for the appellee.

Mr. Chief Justice Alvey delivered the opinion of the Court:

On this appeal, the defendant, the appellant, has assigned several errors in the rulings of the court below:

1st. In holding that the plaintiff was a competent witness to testify in her own behalf under the statute.

2d. In refusing to take the case from the jury for want of sufficient evidence for them to consider.

3d. In granting the several prayers offered by the plaintiff.

4th. In refusing to grant certain prayers offered by the defendant, and in qualifying certain other prayers that were granted.

5th. In instructing the jury that there was no difference in the right of the plaintiff to recover in respect to services rendered after she attained the age of 18 years and before she attained the age of 21 years, and those rendered after the plaintiff became of the age of 21 years, under the facts of the case; and,

6th. In instructing the jury that the plaintiff might recover upon an understanding between herself and her father that she would be paid for her services by her father in his will; and that, upon such finding by the jury, the statute of limitations formed no bar to the action.

1. With respect to the first question raised by the errors assigned, that as to the competency of the plaintiff to testify as a witness in her own behalf, we perceive no error in the ruling of the court below. The Revised Statutes, United States, Sec. 858, provides: " That in actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, *as to any transaction with, or statement by,* the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court."* The statute is a remedial one, intended to remove technical disqualifications in the common-law rules of evidence, and to promote the fair administration of justice, and should, therefore, be liberally construed to accomplish the end in view. *Texas* v. *Chiles,* 21 Wall. 488. In actions by or against executors or administrators the parties are not rendered wholly incompetent, but only as to matters immediately and directly relating to the transaction between the parties thereto, and to which both could testify upon terms of equality, if both were living. The reason and policy of the statute is to provide that when one of the par-

* See Sec. 1064 of the District of Columbia Code, in effect January 1, 1902.— REPORTER.

ties to a controverted transaction is silenced by death, the other shall be silenced by law. Whart. Ev., Sec. 466. It is to be observed that the statute, by its terms, only excludes proof by the surviving party of *transactions* with, or *statements by*, the deceased party, but does not make the surviving party incompetent as to other matters. The performance of the services claimed for and the value thereof, are facts apart from and independent of the alleged contract or understanding with the deceased. The services may have been performed, and doubtless would have been, without any contract or understanding with respect thereto; and, as independent facts, they may have been proved or disproved by any witness with knowledge upon the subject, and wholly irrespective of any contract.

This is not a new question upon the construction of the statute. The code of the State of Tennessee contains a provision identical with the provisions of the Revised Statutes, United States, in respect to this matter, and the Supreme Court of that State has held, that, in an action against an administrator, the plaintiff was competent to testify in his own behalf in regard to any subject not the controverted transaction between the deceased and the surviving party. *Minnis* v. *Abrams*, 105 Tenn. 662. Here the controverted transaction alleged to have occurred between the father and the daughter, is the contract or understanding that the daughter was to be compensated for her services (conceded to have been rendered) either in the lifetime of the father or by a provision in his will. It is not controverted or denied that the services were rendered, but it is denied that there was any agreement or understanding in regard to compensation therefor. We think it clear that the plaintiff was competent to testify as to the fact of the rendition of the services, and the value thereof, though not as to any contract or understanding with her father as to compensation.

2. With respect to the question as to whether the evidence was sufficient to be submitted to the jury, and upon which they could find for the plaintiff, that may be considered in connection with the several errors assigned upon the granted

and rejected prayers for instruction. The entire subject presented would seem to be embraced within a few plain propositions of law, and which do not require extended discussion.

As we have seen, the plaintiff claimed for services rendered from the time she was 18 years of age, and the court ruled that she could rightfully claim and recover for services rendered at any time between the ages of 18 and 21 years, as well as for services rendered after she had attained the age of 21 years. In this we think there was error. There was no proof whatever that the father had emancipated the daughter before she had attained the age of 21 years; nor does any declaration of his, given in proof, furnish the slightest indication of an intention to emancipate her, or to pay her for services rendered prior to the age of 21. Such claim being in contravention of the rights of the father in the services of the child, should be established by clear and unmistakable evidence. That it was competent to the father to emancipate the daughter before the age of 21 years may be conceded, and also to agree to pay her for her services after such emancipation, but the facts must be shown by clear and distinct proof, as no presumption can be indulged in favor of the claim in such case. Indeed, it was conceded by the learned court below that the law does not imply an obligation on the part of the parent to pay a minor child for her services, and [the court] seemed to be in doubt whether the claim ought to be pressed for services rendered by the plaintiff between the age of 18 and 21 years; but upon the insistence of counsel the instruction was allowed to stand.

But the case stands upon quite a different footing after the child attains the full age of 21 years. He or she then becomes entirely emancipated from parental control, and may engage to render services as he or she may deem proper, whether to parent or to other parties. But whether son or daughter, the child, by continuing with the parent and living at the same home, as part of the parent's family, may still be legally in the service of the parent. On this point, says Professor Schouler, in his work on Domestic Relations, Sec. 269, there is no dispute; but in settling the presump-

tions of law there is apparently some conflict of authority, especially in some recent cases decided by courts of high authority. The law, however, upon the subject, so far as it is here involved, seems to be well and correctly summed up by that author, in the following text, supported by a large collection of cases cited:

" If a child, after arriving at the age of twenty-one years, continues to live, labor and render service in the father's family, with his knowledge and consent, but without any agreement or understanding as to compensation, the law raises no presumption of a promise to enable the child to maintain an action against the father to recover compensation. The presumption here is, that the parties do not contemplate a payment of wages for services, on the one hand, nor a claim for board or lodging, on the other. For where the relation of parent and child exists, the law will not readily assume that of debtor and creditor likewise; but board and services may constitute a fair equivalent in the general household. But this presumption may be overthrown, and the reverse established by proof of an express or implied contract to that effect; an implied contract being proven by facts and circumstances which show that both parties, at the time the services were performed, contemplated or intended pecuniary recompense. If an express contract by the parent to pay for the child's services be thus shown, but not the rate of compensation, a recovery may be had upon a *quantum meruit* for what these services were fairly worth. The declarations of parents in matters of this sort, if somewhat vague, are not apt to be construed in the child's favor." Sch. Dom. Rel., Sec. 269.

This, we think, is a fair statement of the law upon the subject, and embodies the principles that must govern the case. There is no question of the meritorious services rendered by the plaintiff; and we think the proof, furnished principally by the repeated but varied declarations of the deceased, of his purpose and intention to provide for his daughter, and to save her from want, and his great desire to keep her with him, was of a character that made it proper to be submitted to the jury for their consideration.

As to the nature and mode of compensation, if a contract or understanding be found to exist, there can be no real difficulty. It is well settled that where, from the circumstances of the case, it is manifest that it was understood by both parties that compensation should be made by will, and none is made, an action lies to recover the value of such services. Wood, Mast. & Servt., Sec. 71. And in this aspect of the case, if such contract or understanding be found by the jury, the statute of limitations, as held by the court below, would form no bar to the action.

It is unnecessary to examine each of the rulings of the court below excepted to, separately; but, from what we have said, it follows that the judgment below must be reversed, and the cause be remanded for a new trial. And under the special circumstances of this case, we deem it proper to direct that the costs of this appeal be paid out of the assets of the estate of the deceased; and it is so ordered.

*Judgment reversed and cause remanded.*


Mr. Justice SHEPARD, dissenting:


I concur in the conclusion that the testimony of the plaintiff was properly admitted as limited, and that the judgment should be reversed for the reasons given in the opinion of the court. But I can not agree that the record shows evidence of an agreement or understanding between the plaintiff and her deceased father sufficient to warrant the submission of the issue to the jury.

In my judgment, therefore, the court should have given the instruction prayed for by the defendant, directing the jury to find for the defendant upon the whole case.