## FARRIN et al. v. HARLOW.

### No. 5813.

Court of Appeals of the District of Columbia.

Argued Oct. 4, 1933.

Decided Nov. 6, 1933.

James A. O'Shea, John H. Burnett, and Alfred Goldstein, all of Washington, D. C., for appellants.

Leo P. Harlow and M. H. Lynn, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a judgment in favor of the appellee as defendant below entered upon a verdict directed by the lower court at the close of plaintiffs' evidence.

The case was begun in the lower court by the appellants Loretta Farrin and John J. Farrin, her husband, as plaintiffs, against the administrator of the estate of Patrick M. McMullin, deceased, for recovery of a judgment for services alleged to have been rendered to the decedent.

The plaintiffs alleged that from the year 1918 up to and including June 13, 1929, the date of the death of decedent, they, at the special instance and request of the decedent, performed certain services for him for which decedent promised and agreed to pay to plaintiffs the reasonable and fair sum and price thereof at the date of his death, the services and price thereof being as follows, to wit: Nursing and attending decedent from January 1, 1918, 208 weeks at $12 per week; from August 25, 1923, to September 1, 1928, and from February 1, 1924, to April 1, 1924, nursing and attending decedent night and day, 257 weeks at $25 per week; from September 1, 1928, to February 23, 1929, nursing and attending decedent who was suffering from a stroke, 24 weeks at $40 per week; from February 23, 1929, to June 14, 1929, nursing and attending decedent, 16 weeks at $50 per week; aggregating the total sum of $11,121. The plaintiffs alleged that no part of this sum had ever been paid to them by decedent, nor by his estate, and that the same remained wholly unpaid; wherefore they prayed judgment against the defendant as administrator.

The defendant for his plea alleged: "The supposed cause of action by plaintiffs in their declaration mentioned is founded upon a simple contract and that the same did not accrue to the said plaintiffs at any time within three years next before the commencement of this action." The defendant also alleged that for want of knowledge he could neither admit nor deny the allegations of the declaration in respect to the alleged services and called for strict proof thereof; he denied that the reasonable and fair price for such services was in the sum of $11,121 as alleged by the plaintiffs; he denied that decedent promised and agreed to pay the plaintiffs the reasonable and fair sum and price at the date of his death or at any other time; and denied that decedent was ever requested by plaintiffs to pay such sum or any sum whatever. The defendant moreover alleged that whatever services were

performed for decedent by the plaintiffs, or either of them, were performed in consideration of decedent allowing and permitting plaintiffs to occupy or make their home in decedent's residence, by reason of which he was not, nor is his estate, indebted to the plaintiffs in the sum of $11,121, or in any sum whatsoever.

The issue was tried to the jury and upon the conclusion of plaintiffs' evidence the court upon motion directed a verdict for the defendant which was duly entered with judgment thereon. From this judgment the present appeal was taken.

The decision of the trial justice was based upon his finding that the evidence submitted by the plaintiffs in the case fell "far short" of establishing the cause of action set out in their declaration.

■ Under the issues made by the pleadings the burden was upon the plaintiffs to introduce evidence substantially tending to show that they had performed for the decedent the services set out in their declaration or some part thereof; that the services were rendered under a special contract entered into by the plaintiffs and the decedent; and that in and by the contract the decedent had promised to pay the reasonable value of such services to the plaintiffs at the time of his death.

■ It was not claimed by the plaintiffs that any written contract for such services or for the payment thereof was ever executed by and between the plaintiffs and the decedent in his lifetime. Nor was any evidence offered on behalf of the plaintiffs tending to prove any oral conversation between the decedent and themselves or other parties constituting an agreement of any kind in relation to such services. The plaintiffs, however, undertook to prove the making of the contract sued upon by showing the services which they had in fact rendered to the decedent in his lifetime, the circumstances and conditions under which they were rendered, and declarations made by the decedent to other persons in respect to his purpose to compensate plaintiffs therefor at the time of his death. The question arises whether the evidence in that behalf was sufficient to require the lower court to submit the case to the jury.

It appears from the record that in the year 1915 the decedent, who was a single man, was the owner of a residence property in the city of Washington, D. C.; that some time in that year the plaintiffs moved into the decedent's house and the parties occupied the house together. There were six rooms in the house,

the decedent occupied the back room and the plaintiffs the rest of the house; the decedent boarded with the plaintiffs and paid them for his board; the plaintiffs paid no rent to decedent for the house. The parties were not related to one another in any manner, but from 1915 until the time of decedent's death they continued this arrangement, first in the house into which they moved in 1915, and afterwards in another residence property owned by the decedent into which they moved in 1923. In the second house, as before, the decedent occupied a back room, while the plaintiffs occupied the rest of the house. The relations between the parties continued in the same manner from the year 1915 up to the time of decedent's death in June, 1929. At the time in 1915 when this arrangement was begun the decedent worked for the Hecht Company. He continued to work at this or other employment, with some intermissions, until the year 1928, when he suffered from a stroke. In the year 1918 Mrs. Farrin left her employment and gave her time to her household duties and the care of decedent. During the entire time when the parties occupied the same house Mrs. Farrin continually performed many services for the decedent in the way of preparing a special diet for him, and of nursing him at times when he was suffering from serious ailments, and in the year 1923 when decedent suffered from a broken leg, sustained in an automobile accident; that her services were rendered with great kindness and were of great value, and the decedent appreciated them and spoke of them with gratitude on various occasions. At one time he said to a witness, "I will never forget her. She has been a good faithful woman to me. I am going to take care of her. I am going to actually, Will—I am actually going to take care of her. I am going to deed her this house for her life." It may be noted that the word "Will" in this testimony has no reference to any testamentary disposition of property, but was the name of the party addressed. On another occasion the decedent said to a witness, "She (Mrs. Farrin) had been a nurse and a very good cook and a very good housekeeper, and that she had also seen after his clothes and those things, and he said for those things he expected to see that she was provided for." To another witness he spoke of his ill health and said that he could not get along if it were not for the care shown by Mrs. Farrin, and several times he stated that her care was better for him than all the doctors in town. To a colored servant he said, "When I am gone, this is Boss's happy home," referring to Mrs. Farrin. To another person

he said, "If it were not for this girl here, God knows what I would do. I am a very sick man. Nothing that I can ever do or ever would do will ever repay her for what she has done for me." To another witness he said that Mrs. Farrin had always been a wonderful nurse to him, that is, from the very start, and that he would remember her for it; his words being, "I will remember her for it." After the decedent's death there was found upon his chiffonier a picture of his mother in which was a paper on which was written in his handwriting: "Forgive me for my action, but I cannot stand it no longer. God bless you, my darling. So goodbye. Property for life. It is my desire that the property be given to Mrs. Farrin, all letter—to the contrary, for her kindness and goodness to me. Patrick McMullen."

On the back of this paper, also in his handwriting, was written: "Desire that third—(illegible word) be given to Mrs. Farrin, to make whatever use she desires to make. Please comply with this wish when I am gone. Goodbye to Loretta and David. God bless you, and David, take good care of Loretta."

It is contended by the appellants that the proof of these circumstances and of the decedent's declarations was sufficient to establish that the services rendered by Mrs. Farrin to the decedent in his lifetime were mutually agreed and understood by both parties to be rendered for pay, and that payment therefor was to be made by decedent in his will.

We agree with the lower court that this evidence was not sufficient to establish plaintiffs' claim. While there was no blood or marital relationship between the Farrins and decedent, they nevertheless lived together for fourteen years after the manner of a single family. In the beginning of this period the services required by McMullin, if any, were slight, and it is improbable that any contract would have been made at that time by him promising to pay therefor at the time of his death. A feeling of kindness and good will existed between the Farrins and decedent and there is no competent proof of any communication between them concerning payment to be made for such services. The circumstances tend rather to show that these services were rendered from a sense of kindness and good will toward the decedent, and perhaps with the hope and expectation that the day might come when he would return some benefit to them in recognition thereof. The decedent himself also had this in mind, and when his end approached he undertook to make a voluntary gift to Mrs. Farrin in recognition of her services. This, however, does not appear to have been done as the result of any contract between them but rather out of mutual kindness, affection, and good will. The testimony when considered in its legal aspect therefore fails to establish the existence of any contract between the parties, but discloses a relationship like that between members of the same family in which help was extended by one to another without a contract of employment between them and without any binding obligation for compensation. Whatever expectations Mrs. Farrin may have entertained with respect to a return for her services resulted from this relationship and this sentiment rather than any legal contract between them.

The lower court therefore was justified in directing a verdict for the defendants, and this conclusion makes it unnecessary for us to discuss the various questions arising upon the admission or rejection of evidence contained in the record. The judgment of the lower court is affirmed, with costs.