PEOPLES DRUG STORES, INC. *v.* FENTON
REALTY CORPORATION

[No. 20, October Term, 1948.]

490

*Decided November 11, 1948.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Randolph Barton, Jr.,* and *Robert H. Driskill,* with
whom was *A. M. Bouic* on the brief, for the appellant.

*James W. Gill,* with whom were *Duckett, Gill & Ander-
son* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Peoples Service Drug Stores, Inc., the owner of a
chain of drug stores, brought this suit in the Circuit
Court for Montgomery County to compel Fenton Realty
Company, Inc., to perform an alleged contract to erect
a store building and to lease it to complainant.

The amended bill of complaint alleges that defendant
on December 20, 1945, made an offer to erect a building
on the southeast corner of Colesville Road and Fenton
Street in Silver Spring and to lease it to complainant, the
rent to become payable upon the date of possession. The

terms of the offer, which were submitted in a letter to complainant, were as follows:

"The proposed store is to be 45 feet fronting on Colesville Road by a depth of 115 feet, inside dimensions, with full basement thereunder and to be built according to plans and specifications to be approved by your company with the understanding that said store will be designed in general conformity with the most recent stores opened by your company.

"The rental is to be $9,000 per year and the term of the lease is to be for 15 years. * * *

"It is understood and agreed that the lease itself as to form will be similar to those currently and recently drawn by your company but shall be subject to approval by the undersigned."

On December 21 the offer was accepted by complainant, subject to approval of the lease. In the letter of acceptance R. S. Paylor, an employee of complainant in its real estate and construction division, advised Shannon & Luchs Company, realtors, of Washington, defendant's agent, as follows: "If you will be good enough to send me a plat showing the lot number, size, etc. necessary for the proper drawing of the lease, I will endeavor to get this out for you in the near future and it is our intention to follow the usual routine lease * * *. Will submit same for your approval as well as the Fenton Realty Company."

The bill then alleges that complainant drafted a form of lease and submitted it to defendant, and defendant redrafted it and returned it. Subsequently a form of lease was agreed upon at a conference, but no lease has ever been executed. In September, 1946, Raymond M. Taylor, vice president of Shannon & Luchs Company, advised complainant that, on account of the increased cost of construction, defendant would not execute any lease or otherwise perform the agreement unless complainant would agree to an increase in rent from $9,000 to $12,500 per year. He also wrote defendant's attorney in Brooklyn, New York, that he felt confident that he could urge complainant to agree to the demanded increase, and asked

him to return the copy of the lease so that it could be rewritten.

The bill further alleges that it is desirable and vital to complainant's business to secure prominent corner locations for its stores in business sections or shopping centers; that the corner in question is the only one available in a shopping center in which department and chain stores have recently been opened; that complainant's competitor, United Cigar-Whelan Stores, has a lease on a corner opposite the one in question; and that if the agreement to lease is not enforced, complainant will be greatly damaged.

The bill prays the Court to compel defendant to execute the lease and construct the store building, or to restrain defendant from leasing or selling the land until final adjudication of the case, and to award damages. Defendant demurred, and the Court sustained the demurrer and dismissed the bill. Complainant thereupon appealed from that decree.

It is familiar law that a valid contract may be entered into by letters. Where one party makes a definite offer by letter and the other party accepts the offer unconditionally on the same terms on which it was made, the letters constitute a binding contract. *Cheney v. Eastern Transportation Line,* 59 Md. 557, 565; *Wills v. Carpenter,* 75 Md. 80, 25 A. 415; *Dalton v. Real Estate & Improvement Co.,* 189 Md. 210, 55 A. 2d 789. But, of course, the parties can make the completion of their contract depend upon the execution of a written instrument. The question whether the parties negotiating a contract intended to be bound by their oral agreement but contemplated a written instrument merely as evidence of their agreement, or whether they did not intend to bind themselves until a contract was prepared and signed by them, must be decided from the facts and circumstances in each particular case. If it appears that the terms of the contract are in all respects definitely understood and agreed upon, and there is nothing left for future settlement, and that a part of the understanding of the parties is that a written contract embodying these

terms shall be executed by them to serve merely as evidence of their agreement, the mere fact that the parties understood that the contract should be reduced to writing does not leave the transaction incomplete and without binding force. *Levine v. Lafayette Building Corporation,* 103 N. J. Eq., 121, 142 A. 441. If, on the other hand, it appears that the parties, although they agreed upon all the terms of the contract, intended to have them reduced to writing and signed before the bargain should be considered as complete, neither party will be bound until that is done, as long as the contract remains without any acts done under it on either side. *Mississippi & Dominion Steamship Co. v. Swift,* 86 Me. 248, 29 A. 1063, 41 Am. St. Rep. 545; *Water Commissioners of Jersey City v. Brown,* 32 N. J. L. 504, 510; *Donnelly v. Currie Hardware Co.,* 66 N. J. L. 388, 49 A. 428.

In this case the parties understood that the store was to be designed "in general conformity with the most recent stores" opened by complainant. This general conception of the type of building to be erected is not specific enough to serve as a basis for specific enforcement. Defendant stipulated in its offer that the store was to be built in accordance with plans and specifications to be approved by complainant, but it is conceded that no plans and specifications have been submitted. It was also mutually understood that any lease drawn by complainant was to be subject to the approval of defendant. To constitute a valid contract, the offer of one party must be certain and definite, and the acceptance of the other party must correspond with the offer in its entirety. A contract, to be final, must extend to all the terms which the parties intend to introduce, and material terms cannot be left for future settlement. Until actual completion of the bargain either party is at liberty to withdraw his consent and put an end to the negotiations. *Buffalo Pressed Steel Co. v. Kirwan,* 138 Md. 60, 64, 113 A. 628; *Kaufmann v. Adalman,* 186 Md. 639, 47 A. 2d 755; *Water Commissioners of Jersey City v. Brown,* 32 N. J. L. 504, 509. Certainly, according to the allega-

tions of the amended bill, Shannon & Luchs Company, defendant's agent in Washington, did not understand that the contract was completed. When the vice president of that firm wrote to defendant's attorney in Brooklyn, New York, in September, 1946, he asked that the copy of the lease be returned so that it could be rewritten with the hope that the negotiations could be "terminated to the satisfaction of all concerned" and the architect could start the preparation of the blueprints for the building.

We think complainant and defendant did not intend to conclude their contract by their correspondence in December, 1945, but were only settling the terms of an agreement into which they proposed to enter after the particulars were completely adjusted. This agreement was to be carefully drawn, and only by that agreement did they intend to be bound.

Consequently there is no basis for relief in equity, and there is no need to consider the question whether the alleged contract could have been specifically enforced if the lease had been executed. The decree sustaining the demurrer and dismissing the bill will, therefore, be affirmed.

*Decree affirmed, with costs.*