BECK *v.* BERNSTEIN

[No. 172, October Term, 1950.]

*Decided June 15, 1951.*

The cause was argued before MARBURY, C. J., and COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Ralph G. Shure* and *James H. Pugh* for the appellant.

*John R. Reeves*, with whom were *Robert W. Beall* and *Joseph B. Danzansky* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree ordering the appellant to specifically perform an alleged agreement to lease certain lots in Silver Spring, Maryland.

The appellant, being the owner of these two lots, through her real estate broker, sent the following letter to the appellee, signed by her and to which she placed the name of her husband, Herbert E. Beck:

"February 15, 1950.

Mr. Leo M. Bernstein
1415 K Street, N.W.
Washington, D. C.

Re: Lease of property at northeast corner of Fenton Street and Roeder Road, Silver Spring, Maryland being Lots 17 and 18 (formerly Lots 7 and 8) on plat of Roeder's Edition.

Dear Sir:

In connection with our conversation of February 14, relative to leasing the above property:

1. We will lease the property including the residence for $\frac{\$5600.00}{\$5000.00}$ per year for 99 years, ~~renewable,~~ rents to be paid monthly through the office of Wm. H. Saunders Co., Inc., providing Lessee will improve the property with a fireproof building at a cost of not less than $50,000.00.

▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬

2.  The lot involved has a frontage on Fenton Street of 62.74 feet and a 110 foot frontage on Roeder Road.  The southern line adjoining Lacy's store has a depth of 113 feet.  Total area approximately 7000 square feet.  The lot is zoned for first commercial use.

pay all

3.  Lessee must ~~agree to pay all increase in~~ taxes on Real Estate. ~~either as a result of improvements made or from natural causes over and above the present taxes which are $500.00 per annum.~~

~~4.  There is a first trust of $25,000.00 payable $175.00 per month at 5% interest.  These payments can be handled to suit the Lessee either by making the payments direct to the holder of the notes or allowing me to make them as I have been doing.~~

5.  The conditions contained in this letter will be in force until March 16, 1950, after that date this understanding will become null and void until such time as you may be able to bring this matter to a satisfactory conclusion.

We would like to take this opportunity to notify you that we only recognize Wm. H. Saunders Co., Inc., as our brokers in this transaction and any comissions agreed upon as a result of a lease will be paid to their office.

Very truly yours,
HESTER E. BECK
Hester Beck, Owner
HERBERT BECK
Herbert Beck, Owner"

The deletions indicated were made before the appellant signed the letter prepared by her broker.

On March 6th, 1950, the appellee sent the following letter to the appellant and her husband:

"Mrs. Hester E. Beck

Mr. Herbert Beck

Silver Springs, Maryland

Re:  Lease of property at northeast corner of Fenton Street and Roeder Road, Silver Spring, Md., being

Lots 17 and 18 (formerly Lots 7 and 8) on Plat of Roeders Edition.

Dear Mr. and Mrs. Beck:

Replying to your letter of February 15, 1950, wherein you offer to lease the above described property, including the residence located thereon, for a period of 99 years at a rental of $5,600.00 per year, providing lessee will improve said property with a fire-proof building at a cost of not less than $50,000.00, please be advised that your offer is hereby accepted. Lessee agrees to pay rent at the rate of $5,600.00 per year and in consideration of this agreement there is enclosed herewith a check for the first months rent in advance. Lessee further agrees to construct upon said property a fire-proof building at a cost of not less than $50,000.00 and will pay all taxes on said real estate from the date possession is turned over to lessee. Rent also shall begin as of that date. It is understood that lessee is willing that rent shall begin as of March 16, 1950, if you can turn possession over as of that date; otherwise possession shall not be later than six months after March 16th, 1950. It is understood that the title to said property is good of record and in fact and that there are no restrictions or clouds upon the title which will in any wise prevent you from executing the said 99 year lease. I would appreciate it very much if you will have your attorney arrange an appointment with Mr. Stanley H. Fischer, my attorney, for the purpose of drawing up the contemplated lease.

Very truly yours,
LEO M. BERNSTEIN
Leo M. Bernstein"

Upon indication that the appellant would not go through with the alleged offer made in her letter of February 15th, 1950, the appellee filed a Bill of Complaint alleging the matters set out in the aforesaid letters of February 15th and March 6th. He indicated his readiness to perform his part of the agreement, the refusal of the appellant to perform her part and asked that the

alleged agreement be specifically enforced and that the appellant, Hester E. Beck, and her husband, Herbert Beck, be decreed to execute the lease for ninety nine years in accordance with the alleged agreement. From a decree ordering the appellant, Hester E. Beck, to execute the lease in accordance with the terms of the alleged agreement, the appellant appeals.

Of course, specific performance of a contract will not be decreed unless it is clear, unambigious, and certain in all its parts and is fair and mutual. *Naughton v. Clubb*, 188 Md. 374, 52 A. 2d 739; *Barranco v. Kostens*, 189 Md. 94, 54 A. 326; *Kalis v. Shor*, 193 Md. 643, 69 Atl. 2nd 486. A contract, to be final, must include all the terms which the parties intend to introduce and material terms cannot be left for future settlement. Either party is at liberty to put an end to the negotiations until actual completion of the bargain. *Peoples Drug Stores v. Fenton*, 191 Md. 489, 494, 62 A. 2d 273, 274. In that case a suit was brought by the Peoples Drug Stores to compel Fenton, the owner of the land, to perform an alleged contract to erect a store building and to lease it to complainants. The terms of the offer submitted in a letter to Peoples Drug Stores as to the specifications of the buildings were as follows: "The proposed store is to be 45 feet fronting on Colesville Road by a depth of 115 feet, inside dimensions, with full basement thereunder and to be built according to plans and specifications to be approved by your company with the understanding that said store will be designed in general conformity with the most recent stores opened by your company." In affirming the denial of specific performance of that contract, this Court said: "In this case, the parties understood that the store was to be designed 'in general conformity with the most recent stores' opened by complainant. This general conception of the type of building to be erected is not specific enough to serve as a basis for specific enforcement."

In the instant case the only description of the building to be erected is "a fire-proof building at a cost of not

less than $50,000.00". There is no specification as to whether this building was to be of brick, blocks or frame, or whether it was to be garage, a store, or a filling station. In fact, it is hard to conceive of a more indefinite description of a building than that set out in the letters in this case. The appellee contends that the building was obviously considered incidental to the leasing of the land itself. However, it is evident that the value of the fee will be reflected in the type of building erected on the land. This contemplated lease, not having a renewal clause, at its expiration would revert to appellant's heirs or assigns. She is naturally therefore greatly interested in the type of building to be erected thereon. One of the requisites of specific performance of a contract is its mutuality. This alleged contract could hardly be specifically enforced against the appellee under the meager description given of the building. *Brummel v. Realty Co.*, 146 Md. 56, 63, 125 A. 905. It was said in *Miller on Equity Procedure,* page 789, paragraph 683: "An agreement for the assignment of a particular house, or the erection and purchase of a house, must be sufficiently definite to guide the court in the direction to be given for the specific performance, or at any rate that it may be made certain and definite upon proper inquiry." *Busey v. McCurley,* 61 Md. 436, 446.

The chancellor cannot grant the specific performance of an alleged contract unless it is so clear, definite and convincing as to leave no reasonable doubt as to the existence of the contract and its terms. If the contract is uncertain or ambiguous, it will not be specifically enforced. *Trotter v. Lewis,* 185 Md. 528, 45 A. 2d 329; *Barranco v. Kostens, supra; Moran v. Hammersla,* 188 Md. 378, 52 A. 2d 727; *Kalis v. Shor, supra.* Finding that the alleged contract in this case as evidenced by the letters of February 15th and March 6th, supra, is too indefinite to be enforced, the decree will be reversed.

*Decree reversed with costs, and Bill of Complaint dismissed.*