EDMUND J. FLYNN COMPANY,
Appellant,

v.

Gerard M. LaVAY, et al., Appellees.

Gerard M. LaVAY, et al., Appellants,

v.

EDMUND J. FLYNN COMPANY,
Appellee.

No. 79–708, 79–789.

District of Columbia Court of Appeals.

Argued March 20, 1980.

Decided May 13, 1981.

James C. Eastman, Washington, D. C., for appellant in No. 79–708 and appellee in No. 79–789.

Glenn A. Mitchell, Washington, D. C., with whom Richard A. Bussey and Catherine R. Baumer, Washington, D. C., were on the brief, for appellees in No. 79–708 and appellants in No. 79–789.

Before HARRIS, MACK and FERREN, Associate Judges.

HARRIS, Associate Judge:

Edmund J. Flynn Company, a real estate broker, appeals from the trial court's determination that it had no contract to serve as a commissioned sales agent for the developers of a condominium project in the District of Columbia.[1] In a cross-appeal, the defendants in the nonjury trial challenge the award to Flynn of $18,000 (with interest) as the reasonable value of services rendered under both implied and express agency agreements calling for the performance of presales services. We find no clear error in the trial court's findings of facts and conclusions of law. However, because the record does not reveal the extent to which an erroneous evidentiary ruling may have affected the outcome, we vacate the judgment and remand the case solely to permit reconsideration thereof in light of our treatment of the attorney-client privilege issue.

I

In early 1977, defendants Gerard M. La-Vay and Gerard M. LaVay Corporation, first by themselves and later as joint venturers with defendants Richard J. Donohoe and Donohoe Construction Company, commenced planning for a condominium development in the District of Columbia (at North Capitol Street and Michigan Avenue, N.E.) to be called Park Place. While the project was still in the formative stage, and before initiation of the joint venture, La-Vay sought to assemble a group of specialists who would assist in the development and the marketing of Park Place. In that endeavor, LaVay contacted plaintiff's president in a February 1977 meeting at the latter's office. The trial court found that at that meeting, LaVay raised generally the prospects of Flynn's acting as sales agent for Park Place, but that the parties concluded no agreement and executed no writings.

Notwithstanding the absence of a written sales agency contract, LaVay (together with his joint venturers) subsequently invited Flynn to participate in certain meetings related to the sale of the envisioned units. There was no dispute at trial that Flynn attended those meetings, although Flynn offered substantial additional testimony, challenged by LaVay, regarding the extent

---

1. The action in the trial court was brought by Edmund J. Flynn Company against Gerard M. LaVay, Gerard M. LaVay Corporation, Richard J. Donohoe, and Donohoe Construction Compa-
ny. Since we dispose of cross-appeals, we refer to the parties as plaintiff (or Flynn) and defendants (or LaVay).

and the value of the plaintiff's other activities on behalf of the defendants. The trial court resolved much of this conflict in awarding Flynn judgment for services it rendered to defendants.

Substantial evidence supports the other branch of the trial court's findings: While the parties intended originally to appoint Flynn the commissioned sales agent for Park Place, later disagreement over material terms regarding compensation and termination prevented formation of the contemplated contract. During the course of these ultimately fruitless sales agency negotiations, Flynn continued its participation in LaVay's meetings. Moreover, on March 21, 1978, LaVay delivered a written agreement to Flynn appointing Flynn its agent for the limited purpose of responding to initial inquiries from prospective buyers. That appointment noted that the parties contemplated, but had not entered into, a formal written agreement for Flynn to act as the sales agent for Park Place.

In its extensive findings of fact and conclusions of law, the trial court concluded that Flynn acted as a limited pre-marketing agent for appellees, first under an implied-in-fact agreement dating from the February 1977 meeting with LaVay, and later under the express March 21, 1978, limited agency appointment. Indicating that the pre-marketing agency relationship was of an indefinite duration and terminable at the will of either party, the trial court found that defendants revoked the agency agreement on September 21, 1978. Judgment for plaintiff in the amount of $18,000 plus interest was entered as compensation for Flynn's activities under that pre-marketing agency agreement.

## II

At trial, plaintiff endeavored to cast itself as the beneficiary of a far more lucrative contract which purportedly retained Flynn to act as the exclusive commissioned sales agent for Park Place. In this effort, *Flynn* presented the testimony of Lipman Redman, an attorney for the defendants who had participated in what the trial court found to be aborted negotiations for just such a sales agency agreement. The import of Redman's testimony was that for a period of time defendants considered drafts of a sales agency contract which had been proposed by Flynn, but which they ultimately rejected.

In preparation for the development of this testimony, plaintiff conducted pretrial discovery, ostensibly exhaustive, which sought all materials relevant to negotiations over the draft agreement. The defendants refused disclosure of some of the requested documents, asserting that they had been communicated in confidence to or from attorney Redman, and hence that they were privileged.

On cross-examination of Redman at trial, however, defendants introduced over objection a memorandum from Redman reciting certain details of the sales agency contract negotiations. Flynn contended that the document fell within the scope of its prior discovery requests, which LaVay had refused with an assertion of the attorney-client privilege. Counsel for Flynn further argued that the introduction of the Redman memorandum into evidence had waived the previously invoked attorney-client privilege and entitled plaintiff to access to all formerly withheld material. The trial court refused the renewed disclosure request at that time and again when plaintiff made an unsuccessful motion for a new trial, claiming prejudice to its trial examination of Redman because of the denied disclosure of defendants' withheld documents.

## III

Most of the controversy on these appeals stems from the trial court's resolution of factual disputes regarding the sales agency negotiations between the parties. Accordingly, we observe that we are obliged to treat the trial court's factual findings as presumptively correct unless they are clearly erroneous or unsupported by the record. *See* D.C.Code 1973, § 17–305(a). That presumption properly exists because the trial court heard the testimony and evaluated its credibility. *See, e. g., In re A. B. H.,* D.C.

App., 343 A.2d 573, 575 (1975); *Johnson & Jenkins Funeral Home, Inc. v. District of Columbia*, D.C.App., 318 A.2d 596, 597 (1974); *Lee Washington, Inc. v. Washington Motor Truck Transportation Employees Health and Welfare Trust*, D.C.App., 310 A.2d 604, 606 (1973). Recognizing that limitation on our review function, we proceed to a consideration of the merits.

## IV

Flynn contends that a sales commission contract existed between the parties, and therefore it is entitled to certain future commissions from the sale of Park Place units which it would have earned but for the breach of that contract by LaVay. 11 Williston on Contracts, § 1339 (3d ed. 1968). The trial court determined, however, that although the parties conducted negotiations in contemplation of such an agreement, no contract covering sales commissions ever was formed. The court stated:

From the evidence presented, the Court determines that the parties did not intend that the negotiations should amount to an agreement prior to the execution of the formal writing. · The parties indicated that as late as March 21, 1978, in the agency appointment agreement, and, by the unsettled nature of the negotiations, especially regarding the question of the Flynn Company serving as the exclusive sales agent. A written contract embodying the completed contract was contemplated and the Court will give effect to this intention not to be bound. Accordingly, any claim for damages based on the loss of future commissions must be denied.

█ The record supports the conclusion that no sales commission contract was created because there never was any agreement on the material terms of compensation and termination.[2] To be final, contract negotiations must include all of the terms which the parties intended to resolve; material terms cannot be left to future settle-

ment. *See Beck v. Bernstein*, 198 Md. 244, 81 A.2d 608 (1951). Both parties agree that no formal sales commission agreement was signed. Since either party was at liberty to stop negotiations and not to complete the bargain, no contract existed. *Beck v. Bernstein, supra*, 198 Md. at 248, 81 A.2d at 609–10.

█ In evaluating contract formation, we also look closely at the parties' intention to be bound. In order to form a binding agreement, both parties must have the distinct intention to be bound; without such intent, there can be no assent and therefore no contract. *Compare Smith v. Farrell*, 199 Va. 121, 128, 98 S.E.2d 3, 7–8 (1957), *with Coastland Corp. v. Third National Mortgage Co.*, 611 F.2d 969, 975 (4th Cir. 1979) (citation omitted). Defendant LaVay took no writing to the unscheduled February 1977 meeting, and no writing embodying the terms of oral discussions was executed at the meeting or at any time thereafter. Indeed, the subsequent negotiations about drafts of a written sales commission agreement reflect the parties' intention not to be bound until a formal writing was executed. *Binder v. Benson*, 225 Md. 456, 462, 171 A.2d 248, 250–51 (1961); *Peoples Drug Stores v. Fenton Realty Corp.*, 191 Md. 489, 494, 62 A.2d 273, 275–76 (1948). There is no evidence indicating a meeting of the minds as to the variety of details usually present in a developer-broker contract.

The only writing executed by the parties was the March 21, 1978, limited agency appointment form drafted by Flynn and signed by defendants. That document stated that "[a] more formal writing" was contemplated before Flynn could act as the Park Place sales agent. Unquestionably, Flynn was hopeful and believed it had a chance to become the exclusive broker for the project. Nonetheless, there is substantial evidence in the record that a binding written sales commission contract did not exist and that only preliminary negotiations were underway. Therefore, we find no er-

---

2. In particular, the parties had numerous discussions and haggles over Flynn's compensation.

ror in the trial court's findings that the parties did not intend their negotiations to constitute a sales commission contract prior to the execution of a formal writing and, as a result, that no sales commission contract was formed.[3]

## V

While the trial court found that the parties did not create a sales commission contract, it did conclude that both an implied and an express agency agreement existed between the parties for the limited purpose of Flynn's rendering pre-marketing services. The burden of proving an agency relationship rests with the party asserting the relationship. *H. G. Smithy Co. v. Washington Medical Center, Inc.*, D.C.App., 374 A.2d 891, 893 (1977); *Goldberg v. Barta*, D.C.Mun.App., 109 A.2d 779, 782 (1954). A broker alleging such a relationship must be able to show that the purported principal authorized the broker to act as its agent. Absent authorization, a broker acts as a mere volunteer and is not entitled to commissions or fees for its services. *H. G. Smithy Co. v. Washington Medical Center, Inc., supra; Apostolides v. Colecchia*, D.C. App., 221 A.2d 437, 438–39 (1966). An analysis of the record leads us to conclude that the trial court did not err in ruling that plaintiff had carried its burden and proved the existence of an agency relationship.

Without doubt, the trial court correctly premised its award of damages on its conclusion that the March 21, 1978, written agency appointment demonstrated Flynn's authority to act for LaVay in performing pre-marketing services. An agent acting pursuant to an express appointment may recover the fair and just value of services rendered, even absent an explicit compensation agreement. 2 Restatement (Second) of Agency § 443, Comment (d) (1958).

The trial court also properly extended its award to include compensation for services rendered prior to March 21, 1978, finding that Flynn proved the existence of

an implied-in-fact agency to perform pre-marketing functions during that period. A party seeking payment must demonstrate three elements to establish an implied-in-fact contract which would entitle it to compensation:

> First, the party seeking payment must show that the services were carried out under such circumstances as to give the recipient reason to understand that the services were rendered for the recipient and not for some other person. Second, the party must demonstrate the existence of such circumstances as to put the recipient on notice that the services were not rendered gratuitously. Finally, the party must prove that the services were beneficial to the recipient. [*H. G. Smithy Co. v. Washington Medical Center, Inc., supra*, 374 A.2d at 893.]

*Accord, Bloomgarden v. Coyer*, 156 U.S. App.D.C. 109, 116–17, 479 F.2d 201, 208–09 (1973).

Ample evidence before the trial court reflected that LaVay sought out Flynn's participation in a substantial number of meetings and other pre-marketing activities, all of which were intended to lead to the successful development of Park Place. After considering this evidence, the trial court found that:

> Despite the absence of the contemplated formal agreement, but with the understanding that the Flynn Company would be the sales agent for the Park Place Project once mutually agreeable terms were worked out, Flynn Company began participating in the planning of the venture, and offered contributions of time and ideas. LaVay, and later Donohoe, acquiesced in this participation; indeed, LaVay and Donohoe invited and encouraged this participation in a number of instances. LaVay and Donohoe also represented to third parties that Flynn was to have the responsibility for sales and marketing.

---

**3.** Given our accord with the trial court's finding that no sales commission contract existed between the parties, we need not address LaVay's

contention that the statute of frauds prevents the oral negotiations over sales commissions from constituting an oral contract.

In light of these factual determinations, which we may not disturb absent indication of clear error, the defendants may not persuasively deny that they were aware that Flynn acted on their behalf and was not acting gratuitously. Plaintiff having satisfied the first two elements of an implied agency as defined in *H. G. Smithy Co., supra,* the trial court committed no error in awarding Flynn judgment to the extent that it satisfied the third element of *Smithy* by proving the beneficial value of its services rendered.

## VI

We now examine the value of Flynn's pre-marketing services, upon which computation rests the propriety of the trial court's award. As a starting point, we recognize that agency law permits the award to an agent, whose appointment is terminated without fault, of the fair value of its services. 2 Restatement (Second) of Agency, *supra,* § 452; *see In re Rich,* D.C.App., 337 A.2d 764, 766 (1975).[4]

We are satisfied that the trial court did not err in awarding Flynn a reasonable fee for its work as an agent, based on established criteria.[5] *See Bloomgarden v. Coyer, supra,* 156 U.S.App.D.C. at 119–20, 479 F.2d at 211–12. The trial court considered Flynn's contributions at various meetings, as well as its ability to meet with potential buyers and renters. After hearing the testimony and the cross-examination of the plaintiff company's president and of an expert witness on the valuation of services issue, the trial judge greatly discounted their assessment of Flynn's services. He did, however, heed their testimony and determine the value of such services in the local market. The trial judge stated:

> The Court values the Flynn Company's contribution to the project in terms of attendance at the various functions, contributions of ideas and experience, investment of time and effort, and the use of the Flynn Company's good name by the defendants in promoting the venture at eighteen thousand dollars ($18,000).

A plaintiff need prove damages only with reasonable certainty. *Keefer v. Keefer and Johnson, Inc.,* D.C.App., 361 A.2d 172, 176 n.7 (1976), quoting from *Dis-*

---

4. The general rule on agency compensation is as follows:

§ 443. Amount of Compensation

If the contract of employment provides for compensation to the agent, he is entitled to receive for the full performance of the agreed service:

\* \* \* \* \* \*

(b) the fair value of his services, if there is no agreement for a definite amount. [2 Restatement (Second) of Agency, *supra,* § 443.] The comment on Clause (b) is as follows:

(*d*) If the amount of compensation is not otherwise agreed upon, as where no specific amount is stated and there is no customary rate for the services, it is inferred that, in a transaction in which some compensation is due, the parties have agreed that the agent is to receive the reasonable value of his services. In determining this, evidence of what other agents receive for similar services is competent, together with other factors, including the reputation of the agent, the skill with which the work is done, and the difficulty or danger of the task. \* \* \* [*Ibid.*]

A further principle is:

Comment:

(*a*) [I]f a contract in which one of the parties has rendered services terminates without his fault, ordinarily he is entitled to the reasonable value of such services, although the condition upon which it was agreed that he should receive a specified amount has not occurred before the termination. Normally, this is fair. \* \* \* [*Id.,* § 453.]

5. In their cross-appeal, defendants contend that plaintiff is not entitled to quantum meruit damages because the complaint did not include a count for quantum meruit relief. We find this argument unpersuasive. In its conclusions of law, the trial court based its award on an implied compensation agreement and did not use the words "quantum meruit." The term quantum meruit may refer to either an implied contractual or a quasi-contractual duty requiring compensation for services rendered. Super.Ct. Civ.R. 8(a) requires only a "short and plain statement of the claim" in order to provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (discussing Fed.R.Civ.P. 8(a), which is identical to Super. Ct.Civ.R. 8(a)). Flynn complied with Rule 8 by setting forth a short, plain statement of the facts concerning its pre-marketing activities. The complaint clearly put LaVay on notice regarding the nature of the claim. The legal label for relief sought is not controlling.

trict News Co. v. Goldberg, D.C.Mun.App., 107 A.2d 375, 377 (1954), quoting in turn from Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684 (1927); Sears, Roebuck and Co. v. Goudie, D.C.App., 290 A.2d 826, 833, cert. denied, 409 U.S. 1049, 93 S.Ct. 523, 34 L.Ed.2d 501 (1972). While an award may not be based on speculation or guesswork, it may be a just and reasonable estimate based on relevant data. Bigelow v. RKO Radio Pictures Inc., 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652 (1946). See also Stern v. Ace Wrecking Co., D.C.Mun. App., 38 A.2d 626, 627–28 (1944). Probable and inferential considerations as well as direct and positive proof may provide the basis for an award. Bigelow v. RKO Radio Pictures, Inc., supra, 327 U.S. at 264, 66 S.Ct. at 579. While the award in the instant case was not susceptible of a "mathematical demonstration," the trial judge did consider and reflect upon both the amount and the quality of Flynn's work as an agent. See District News Co. v. Goldberg, supra, 107 A.2d at 377. The trial judge did not err in arriving at the amount of damages awarded to plaintiff for services rendered to defendants.[6]

### VII

Flynn contends that it could have proved the existence of a sales commission contract

had the trial court ordered disclosure of the assertedly privileged documents held by the defendants' attorney Redman. Our but indirect exposure to the evidence presented to the trial court on this issue prevents us from fully evaluating the merits of Flynn's contentions. We do, however, conclude that the trial court erred in denying plaintiff's renewed request for access to the withheld documents after it became clear that defendants, by their actions at trial, had waived the attorney-client privilege, removing the sole obstacle to disclosure of the potentially relevant material. This conclusion requires that we vacate the judgment and remand the case to the trial court for further consideration.

 Evidentiary rulings fall within the sound discretion of the trial judge and ordinarily do not serve as the basis for reversal absent an abuse of discretion and serious injury to the aggrieved party. Hughes v. Pender, D.C.App., 391 A.2d 259, 262 (1978); Guaranty Development Co. v. Liberstein, D.C.Mun.App., 83 A.2d 669, 671 (1951). While no such clear demonstration of abuse and serious injury was exhibited here, we feel compelled to remand for reconsideration since we cannot say that the erroneous evidentiary ruling was harmless.

---

**6.** LaVay also challenges the trial court's award of prejudgment interest to Flynn. D.C.Code 1973, § 15–109, provides:

> In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff. In an action to recover damages for a wrong the judgment for the plaintiff shall bear interest.

The first sentence of this provision expresses the general rule that "where the damages are unliquidated interest runs only from the date of judgment." Dyker Bldg. Co. v. United States, 86 U.S.App.D.C. 297, 302–03, 182 F.2d 85, 90–91 (1950) (discussing virtually identical predecessor statute); accord, National Trucking & Storage Co. v. Pennsylvania R. R. Co., 97 U.S. App.D.C. 52, 59, 228 F.2d 23, 30 (1955); Flanaghan v. Charles H. Tompkins Co., 86 U.S.App.

D.C. 307, 308, 182 F.2d 92, 93 (1950). The second sentence of this section allows the general rule to be overridden where an award of interest is necessary in order to compensate the plaintiff fully. Noel v. O'Brien, D.C.App., 270 A.2d 350, 351 (1970); Tendler v. Jaffe, 92 U.S. App.D.C. 2, 6, 203 F.2d 14, 17, cert. denied, 346 U.S. 817, 74 S.Ct. 29, 98 L.Ed. 344 (1953) (interpreting virtually identical predecessor statute); Dyker Bldg. Co. v. United States, supra, 86 U.S.App.D.C. at 303, 182 F.2d at 91; see National Trucking & Storage Co. v. Pennsylvania R. R. Co., supra, 97 U.S.App.D.C. at 59, 228 F.2d at 30; Flanaghan v. Charles H. Tompkins Co., supra, 86 U.S.App.D.C. at 308, 182 F.2d at 93. Under the statute, the trial court operates within a wide range of discretion in awarding prejudgment interest. Noel v. O'Brien, supra, at 351; see E. F. Hutton & Co. v. Burkholder, 413 F.Supp. 852, 859 (D.D.C. 1976). On the record before us, we find no abuse of the trial court's discretion in its award of prejudgment interest to Flynn.

Testimonial privileges, such as protection for attorney-client confidences, operate as narrow exceptions to the general rule that every person must offer testimony upon all facts relevant to a judicial proceeding. 8 Wigmore, Evidence § 2285 (McNaughton rev. 1961). Intended to promote free exchange between counselor and client during confidential consultations, the privilege properly serves as a shield, not as an offensive tool of litigation. *See id.,* § 2291; *International Telephone & Telegraph Corp. v. United Telephone Co.,* 60 F.R.D. 177, 185 (M.D.Fla.1973), *aff'd,* 550 F.2d 287 (5th Cir. 1977). A party may not, therefore, insist upon protection of the privilege for damaging communications while disclosing those which it considers to be favorable to its position. *Champion International Corp. v. International Paper Co.,* 486 F.Supp. 1328, 1332 (N.D.Ga.1980).

Where a party authorizes the partial disclosure of materials otherwise subject to a valid claim of attorney-client privilege, the privilege must be treated as waived. *Haymes v. Smith,* 73 F.R.D. 572, 576 (W.D.N.Y.1976); *In re Penn Central Commercial Paper Litigation,* 61 F.R.D. 453, 463–64 (S.D.N.Y.1973); *International Telephone & Telegraph Co. v. United Telephone Co., supra,* 60 F.R.D. at 185–86; *see also* McCormick on Evidence, § 93 (2d ed. 1972). Once a party has waived the attorney-client privilege, the other party should receive access to the remaining relevant withheld materials. *United States v. Aronoff,* 466 F.Supp. 855, 862 (S.D.N.Y.1979); *Handguards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 929 (N.D.Cal.1976); *International Telephone & Telegraph Corp. v. United Telephone Co., supra,* 60 F.R.D. at 186; *see also* 8 Wigmore, *supra,* § 2327. In this regard, we note that the scope of relevance as defined for discovery purposes is quite broad. *See* Super.Ct.Civ.R. 26(b). Discovery of assertedly privileged material cannot be circumvented by delaying the first waiver of the privilege until a strategically advantageous stage of a trial. Waiver at trial should permit access at trial to all documents otherwise reasonably covered by a claim of privilege. To sustain selective waiver of an attorney-client privilege for tactical purposes would be unseemly, if not demonstrably unfair.[7]

In the trial court proceedings, the defendants sought to dictate the limits of attorney-client privilege by waiving the protection for a certain memorandum, while maintaining their objection to disclosure of the remainder. The trial court erroneously sustained this selective assertion of the privilege.

We cannot gauge how, if at all, disclosure of the withheld documents would have affected the plaintiff's presentation of its sales commission contract contentions or the trial court's perception of those claims. In the first instance, that evaluation should be performed by the trial judge. Accordingly, we vacate the judgment and remand the case for a hearing on the contents of the withheld documents or for such other reconsideration consistent with this opinion as the trial court deems appropriate.

*So Ordered.*

---

7. *See, e. g., United States v. Blackburn,* 446 F.2d 1089, 1091 (5th Cir.1971), *cert. denied,* 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972) ("[W]hen the client and attorney themselves, for purposes beneficial to the client, lift the veil [of attorney-client privilege], they cannot lower it again", quoting *United States v. Shivley,* 112 F.Supp. 734, 742 (S.D.Cal.1953)); *International Paper Co. v. Fibreboard Corp.,* 63 F.R.D. 88, 92 (D.Del.1974) (It would be "manifestly unfair" to allow one party to make factual assertions and then deny the other party "the foundation for those assertions in order to contradict them."); *Lee National Corp. v. Deramus,* 313 F.Supp. 224, 227 (D.Del.1970) ("It would be patently unfair for a client to disclose those instances which please him and withhold all other occasions," citing 8 Wigmore, *supra,* § 2327; *United States v. Krasnov,* 143 F.Supp. 184, 191 (E.D.Pa.1956), *aff'd,* 355 U.S. 5, 78 S.Ct. 34, 2 L.Ed.2d 21 (1957) ("The privilege once waived cannot be regained.").