**N. David SKINNER, d/b/a Olson-Skinner Co.; a division, Plaintiff/Appellee,**

**v.**

**Thomas CLAUSEN, d/b/a Clausen Welding, Defendant/Appellant.**

**Civ. No. 8980.**

Supreme Court of North Dakota.

June 4, 1974.

Bjella & Jestrab, Williston, and Ray H. Walton, Public Service Commission, Bismarck, for defendant/appellant.

Farhart, Rasmuson, Olson & Lian, P. C., Minot, for plaintiff/appellee.

TEIGEN, Judge.

The defendant Clausen has appealed from a judgment awarding the plaintiff Skinner $3,463.51 as a fair and reasonable value for materials and services rendered by Skinner to Clausen for the repair of a roof.

The case was tried to the court. The court made three findings of fact, as follows:

"I.

"That the Defendant orally contracted with the Plaintiff for the repair of a roof and that Defendant was the owner of said roof.

"II.

"That the Plaintiff and Defendant had not agreed as to a price for the repair of said roof.

"III.

"That the fair and reasonable value of the materials and services rendered by Plaintiff to the Defendant for the repair of said roof is in the sum of $3,463.51."

It appears that the defendant Clausen, who owned a Butler steel building 100' x 50' to which he had later attached a lean-to 80' x 24', orally engaged the plaintiff Skinner and his company, who were roofers with 22 years' experience, to repair leaks in the roof of the lean-to building. The leaks had supposedly been previously repaired by Jacobson Construction Company but had reappeared. No price was agreed on nor was the method of repair discussed.

Skinner examined the job and ordered materials delivered to the site. Clausen questioned Skinner about the cost of the project because of the size of the pile of materials which were delivered to the site. Skinner apparently did not state a price but told Clausen that he would make the roof watertight, and Clausen authorized Skinner to proceed.

Skinner's roofing crew worked from one week to ten days to complete the repairs. Apparently Clausen was absent from the site during at least a portion of the work period. He testified that on one occasion he received a telephone call from his brother advising that Skinner's work crew had started going up the side of the roof of the main building. Clausen told Skinner's foreman to stop because the leaks were not on the main roof. He testified that the men stopped work temporarily but, on the following afternoon, Clausen testified, he received another telephone call from his brother advising that the crew was again working. Clausen testified that he then met with Skinner and told him to stop the work but that Skinner told him

that it "had to be done this way, and I told him at that time, I says, 'Well, if you proceed any further, you do it at your own expense, not mine.'" Clausen testified that Skinner told him, "Don't worry about it," or words to that effect, "It will be done right." Skinner testified that to the best of his knowledge the work was never stopped during the installation period and that Clausen had not told him to stop work on the building.

Skinner installed a "twenty-year built-up roof, smooth surface finish" on the roof of the lean-to, running to the top and over the hip of the main building. At the time of trial, four years after the work had been completed, the roof was still in good condition and there were no leaks.

Following completion of the work Skinner's company sent a bill to Clausen for repairs in the sum of $3,445.51. Clausen, at first, did not refuse to pay the bill but kept telling Skinner that he was short of money. Subsequently, Skinner commenced this action.

Clausen introduced evidence, through an employee who had five years' experience with Butler Engineering Department, who testified that, in his opinion, the built-up roof installed by Skinner exceeded the dead load limitations of the building because the building was not designed to sustain such weight; that the roof installed by Skinner was a potential hazard and did not meet the city's building code; and that it did not increase the value of the roof nor its insulating capacity. This witness also testified that placing the built-up roof on only one side of the main building created an unusual and critical stress on the supporting structure, and that Skinner should have added structural supports to the building to support the additional weight.

Clausen also introduced evidence to the effect that he had received a bid for roof repair in the amount of $587 prior to engaging Skinner, but did not accept this bid because Skinner owed Clausen approximately $1,200 and, therefore, he engaged Skinner to do the job.

The evidence also indicates that there may have been more leaks in the lean-to roof than claimed by Clausen. Skinner testified that the method he employed to repair the roof was necessary to do a good job. "You don't shingle it half way up the slope, as a rule, go all the way because water runs downhill, will get underneath the leading edge of whatever you've got on there, and ruin whatever you put—" At this point he was interrupted by another question from counsel. He also testified, "I did what I did because it was recommended practice of the roofing trade."

■ The only argument presented on this appeal is that the findings of fact of the trial court are not supported by the evidence in that: (1) the oral contract of the parties was not for the replacement of the roof; (2) the fair and reasonable value for repairing leaks in the joints between the lean-to and the building was not the amount claimed by Skinner; and (3) the reasonable value of the services and materials supplied does not equal $3,463.51.

"Ordinarily one who performs services for another, without any express agreement as to compensation, is entitled to the reasonable value of his services." Syllabus 3, Myra Foundation v. Harvey, 100 N.W.2d 435 (N.D.1960).

Skinner introduced in evidence a statement of his charges for materials and services rendered. Clausen argued that the statement was not supported by documentation and that there was not sufficient evidence upon which the court could find the reasonable value of the materials and services rendered, and further, the statement was self-serving.

Clausen introduced in evidence the written bid of $587 which he had received but turned down before he engaged Skinner. An analysis of that bid and the work performed by Skinner do not compare as to materials or methods of repair. Skinner's statement and ledger sheet, admitted in evidence, breaks down the cost to labor, materials and sales tax. It is true it does not list in detail the hours of labor nor does it contain a detailed material list. Skinner,

**164**

however, was subject to cross-examination as to these matters. It is clear that Skinner was a highly qualified asphalt roofer, whereas the previous bidder was engaged in the construction business and was not a professional roofer.

The trial court, who heard the witnesses and observed them as they testified, made its findings of fact upon which it based its conclusions of law, which findings are now challenged on this appeal. However, in our review we are bound by Rule 52(a), N.D.R.Civ.P., which provides:

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Under the circumstances of this case, because of the conflict in the evidence and there being substantial evidence to sustain the findings of the trial court, we cannot say that the trial court's findings are clearly erroneous. We therefore affirm the judgment.

ERICKSTAD, C. J., and KNUDSON, PAULSON and VOGEL, JJ., concur.