In the Matter of the ESTATE OF Edna
RAKETTI, Deceased.

Fern M. MARTTILA, Appellee,

v.

Everett LEINO, Personal Representative
of the Estate of Edna Raketti,
Deceased, Appellant.

Virginia STAVER, Appellee,

v.

Everett LEINO, Personal Representative
of the Estate of Edna Raketti,
Deceased, Appellant.

Civ. Nos. 10453, 10454.

Supreme Court of North Dakota.

Nov. 22, 1983.

Caldis & Arneson, Grand Forks, for appellee Marttila; argued by Gordon Caldis, Grand Forks.

Constance Triplett, Grand Forks, for appellee Staver.

Vaaler, Gillig, Warcup, Woutat, Zimney and Foster, Grand Forks, for appellant; argued by Robert Vaaler, Grand Forks.

PEDERSON, Justice.

Everett Leino, personal representative of the estate of Edna Raketti, appeals from two judgments which allow claims against the estate in favor of Edna's sisters, Fern Marttila and Virginia Staver. We affirm.

### MOTION TO DISMISS

Fern has moved this Court to dismiss the appeal, alleging that Everett violated the provisions of Rule 30(b), N.D.R.App.P., by failing to serve, within 10 days of filing of the transcript, a designation of parts of the record to be included in the appendix; failing to serve, within 10 days of filing of the transcript, a statement of issues to be presented for review; and failing to include in the appendix the parts of the record properly designated by Fern.

Everett's counsel admits that the designation of contents of the appendix and issues to be presented for review were served well beyond the 10-day time limit, and states that this violation of the rules was an oversight on his part. He contends, however, that Rule 30(b) does not require the appellant to include the appellee's designated parts of the record in the appendix.

Rule 30(b) clearly provides that the appellant *shall* include in the appendix the portions of the record designated by the appellee. Although the rule encourages agreement between the parties as to the contents of the appendix, absent such agreement the portions of the record designated by each party should be included in one appendix.[1]

Whenever either party contends that there has been unnecessary designation by the other, the court "may impose the cost of producing those parts ..." on the party that made the unnecessary designation. *See* Rule 30(b) N.D.R.App.P.

The rule clearly required Everett to include portions of the record designated by Fern in the appendix. Failure to comply with the Rules of Appellate Procedure, in the discretion of this Court, may be grounds for dismissal of the appeal. Rules 3(a) and 13, N.D.R.App.P. *Kastrow v. Kastrow,* 310 N.W.2d 573, 574 (N.D.1981); *State v. Packineau,* 270 N.W.2d 336, 337 (N.D.1978).

The Procedure Committee comment to Rule 13 notes that sanctions are to be applied sparingly, when necessary to protect the appellate process from abuse. *See Schmidt v. Schmidt,* 325 N.W.2d 230, 232 (N.D.1982); *Jostad v. Jostad,* 285 N.W.2d 583, 585 (N.D.1979). We have often indicated our preference to reach the merits of cases. *Sanford v. Sanden,* 333 N.W.2d 429, 431 (N.D.1983); *Jostad v. Jostad, supra,* 285 N.W.2d at 585. This is particularly true when the record and briefs on the merits

---

1. Although there is no specific authorization in the rules regarding supplemental appendices, it has become increasingly common for the appellee to file his own appendix. This apparently is an outgrowth of a misinterpretation of Rule 30(b) by practitioners. If the provisions of Rule 30(b) are adhered to, there should be no need for an appellee to prepare a supplemental appendix. It is certainly preferable from the court's perspective to have only one appendix which contains the designated portions of the record of all parties. We recognize, however, that in the event the appellant wrongfully refuses to include the appellee's designated portions of the record, the appellee often has no choice but to prepare and file his own appendix.

have been filed and the case is ready to be heard. *Kastrow v. Kastrow, supra,* 310 N.W.2d at 574; *Matter of Estates of Kjorvestad,* 304 N.W.2d 83, 85 (N.D.1981); *Halverson v. Pet, Inc.,* 260 N.W.2d 11, 13 (N.D. 1977).

■ We conclude that dismissal of the appeal is not warranted in this case. Everett's late designation of contents of the appendix and issues on appeal and the failure to include Fern's designated portions of the record in the appendix did not significantly delay processing of the appeal, and Fern has not demonstrated that she was prejudiced. *See Haugland v. Hoyt,* 267 N.W.2d 803, 805 (N.D.1978); *Halverson v. Pet, Inc., supra,* 260 N.W.2d at 12–13.

■ We have repeatedly warned that all appellate rules must be complied with. *Kastrow v. Kastrow, supra,* 310 N.W.2d at 574; *State v. Morrissey,* 295 N.W.2d 305, 307 (N.D.1980). The rules must be treated respectfully, and we do not intend our admonitions to be treated as "empty noise." *State v. Freed,* 340 N.W.2d 172 (N.D.1983); *State v. Morrissey, supra,* 295 N.W.2d at 307; *Jostad v. Jostad,* 285 N.W.2d at 585. We have in the past assessed costs against the noncomplying party in an effort to encourage compliance with the appellate rules. *State v. Morrissey, supra,* 295 N.W.2d at 307; *Halverson v. Pet, Inc., supra,* 260 N.W.2d at 13. We therefore assess costs in the amount of $250.00 against Everett to compensate Fern for costs incurred in preparing a separate appendix. Attorneys should not anticipate that this Court will never use the most severe sanction available. *See State v. Freed, supra.*

## MERITS

Four issues are presented on the merits of the appeal.

### I

■ Everett first contends that the county court is without authority to enter a "judgment" in a probate proceeding, and that the court instead should have entered an "order" allowing the claim. Section 30.1–19–06(1) of the North Dakota Century Code provides, in pertinent part:

"Every claim which is disallowed, in whole or in part, by the personal representative is barred so far as not allowed unless the claimant files a petition for allowance in the court or commences a proceeding against the personal representative not later than sixty days after the mailing of the notice of disallowance or partial allowance if the notice warns the claimant of the impending bar."

A claimant whose claim has been disallowed thus has a choice between two alternate procedures: he may petition the county court for allowance of the claim or may initiate a separate action on the claim. In the instant case, Fern and Virginia petitioned the county court for allowance of their claims in the probate case pending before the court.

■ The county court has been granted jurisdiction over probate matters pursuant to Title 30.1. § 27–07.1–17, NDCC. We have held that "jurisdiction" means the power to inquire into the facts, to apply the law, and to determine and pronounce judgment. *In re Murray,* 145 N.W.2d 899, 903 (N.D.1966), *overruled on other grounds, Kee v. Redlin,* 203 N.W.2d 423, 426 (N.D.1972); *In re Edinger's Estate,* 136 N.W.2d 114, 120 (N.D.1965).

■ We have defined "judgment" as "a judicial determination on matters submitted to a court for decision which fixes the rights and duties of the parties." *Hospital Services, Inc. v. Brackey,* 283 N.W.2d 174, 177 (N.D.1979); *see also Cumber v. Cumber,* 326 N.W.2d 194, 195 (N.D.1982). Clearly a petition for allowance of a claim against an estate is a "matter submitted to a court," and the county court makes a judicial determination which "fixes the rights and duties of the parties" when it allows or disallows the claim.

We also note that allowance of claims against estates by county courts have historically been in the form of a judgment against the estate. In *In re Smith's Estate,* 13 N.D. 513, 101 N.W. 890, 892 (1904), this Court stated: "When a claim is allowed by the county judge, the allowance is in the nature of a judgment against the estate, to

be paid by the executor or administrator in due course of administration." In *Johnson v. Rutherford,* 28 N.D. 87, 147 N.W. 390, 394 (1914), the Court stated that the county court has jurisdiction over the administration of estates, including "the power to litigate the validity of claims against estates, and to enter final judgment thereon as against the estate." *See also Leslie v. Minneapolis Society of Fine Arts,* 259 N.W.2d 898, 902 (Minn.1977).

■ Everett also argues that, even if the county court has authority to enter judgment in a probate matter, such judgment cannot exceed $10,000. We find no merit in this argument. The probate jurisdiction of the county court is entirely separate and distinct from its jurisdiction in other civil matters, which is limited to cases with not more than $10,000 in controversy. § 27–07.1–17, NDCC. The logical extension of Everett's argument would be that county courts would not have jurisdiction of estates valued at over $10,000. This clearly was not the intent of the legislature when it granted jurisdiction of probate cases to the county court, and we conclude that the $10,000 jurisdictional limit has no application to the county court's probate jurisdiction.

■ Finally, Everett argues that the judgment entered by the county court improperly serves as a lien upon his property. The judgment, however, is entered against Everett only in his capacity as personal representative of the estate. Judgments against estates must by their very nature be entered against the personal representative, because he is the person authorized to distribute funds from the estate. *See, e.g.,* §§ 30.1–18–03(2) and 30.1–18–15, NDCC. Furthermore, § 30.1–18–03(3) provides that the personal representative may be sued for obligations incurred by the decedent. *See also* § 30.1–19–06(1), NDCC (claimant may commence a separate proceeding against personal representative for allowance of claim). A remedy will be available if Everett's individual property is wrongfully encumbered by a lien from a judgment where he is not an individual debtor. *See* § 28–20–19, NDCC.

We conclude that the court did not err in entering a "judgment," rather than an "order," allowing the claims.

II

Everett next contends that the court erred in allowing Fern to testify that Edna had promised to pay Fern for her help during Edna's illness. Everett contends that these statements were hearsay and should not have been admitted. The trial court held that the statements, although hearsay, were admissible under Rule 804(b)(5), N.D.R.Ev.

■ The parties and the court below have overlooked the determinative fact: the statements are not hearsay. Rule 801(c), N.D.R.Ev., defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The statements made by Edna to Fern were not offered to prove the truth of the matter asserted therein.

The statements in question were made at various times while Fern was taking care of Edna. These statements were to the effect that Edna would pay Fern for taking care of her, and that Fern could "name her own price" and "write the amount on a check." Fern offered these statements to prove that there was an express agreement regarding payment for her services, and that this express agreement rebuts the presumption that the services were rendered gratuitously.

Edna's statements that she would pay Fern for her services fall within the category of non-hearsay designated as "verbal acts" or "verbal conduct." The utterance of the words is, in itself, an operative fact which gives rise to legal consequences. *See* 4 Weinstein & Berger, Weinstein's Evidence, ¶ 801(c)[01] (1981); 6 Wigmore, Evidence § 1770 (Chadbourn rev. 1976).

In *National Labor Relations Board v. H. Koch & Sons,* 578 F.2d 1287 (9th Cir.1978), the United States Court of Appeals for the Ninth Circuit discussed Rule 801(c) of the

Federal Rules of Evidence, from which our Rule 801(c) was adopted verbatim. The statement at issue related to an oral agreement between the parties. The court stated:

"Bruno's testimony as to what Young said would be hearsay if introduced to prove the truth of what Young said. F.R.E. 801(c). It was not offered or received for that purpose, but only to show that Young uttered words of assent, regardless of their 'truth.' That is not hearsay at all, but is rather evidence of verbal conduct.

Manifestly, proof of utterances and writings may be made with an almost infinite variety of ... purposes, not resting for their value upon the veracity of the out-of-court declarant and hence falling outside the hearsay classification.... [P]roof of oral utterances by the parties in a contract suit constituting the offer and acceptance which brought the contract into being, are not evidence of assertions offered testimonially but rather of utterance—verbal conduct—to which the law attaches duties and liabilities. McCormick on Evidence, § 249, 2 Ed. p. 588."

*Id.* at 1290–91.

In *Creaghe v. Iowa Home Mutual Casualty Co.,* 323 F.2d 981 (10th Cir.1963), the United States Court of Appeals for the Tenth Circuit discusses the nonhearsay nature of statements constituting verbal conduct in a contract action:

"The hearsay rule does not exclude *relevant* testimony as to what the contracting parties said with respect to the making or the terms of an oral agreement. The presence or absence of such words and statements of themselves are part of the issues in the case. This use of such testimony does not require a reliance by the jury or the judge upon the competency of the person who originally made the statements for the truth of their content. Neither the truth of the statements nor their accuracy are then involved. In the case at bar we are not concerned with whether the insured was truthful or not when he told the agent he wanted the policy cancelled and that he did not need it any more. It is enough for the issues here presented to determine only whether or not he made such statements to the agent. The fact that these statements were made was testified to by the agent, and his competency and truthfulness as to this testimony was subject to testing through cross-examination by counsel for appellant, and this was done at considerable length."

*Id.* at 984.

■ In the instant case, we are not concerned with the truthfulness of Edna's statement that she would pay Fern for her services. The mere fact of utterance is relevant to the issue of whether or not there was an express agreement to pay for such services. It would make no difference if Edna had been lying and had no intention to pay Fern for her services. It is the outward manifestations of assent which govern, not the secret intentions of the parties. *North Central Jobbers v. Snortland,* 329 N.W.2d 614, 616–17 (N.D.1983); *Amann v. Frederick,* 257 N.W.2d 436, 439 (N.D.1977); *see also National Labor Relations Board v. H. Koch & Sons, supra,* 578 F.2d at 1291.

■ Everett has argued at great length that Fern's testimony regarding Edna's statements was completely self-serving and uncorroborated. This has no effect on the admissibility of Edna's statements, but goes to the weight to be accorded Fern's testimony. Fern's competency and truthfulness as to this testimony was subject to testing through cross-examination. *See Creaghe, supra,* 323 F.2d at 984.

■ The hearsay rule is based upon the concerns which arise when an out-of-court statement is offered to prove the truth of some matter asserted therein. The trier of fact must then depend upon the veracity of an out-of-court declarant to establish a material fact. As noted in the Explanatory Note to Rule 801:

"[I]t is only when a statement is offered to prove the truth of the matter asserted that there is a lack of the safeguards used to insure credibility of the declarant.

It is this lack of an oath and cross-examination of the declarant that warrants the exclusion of evidence as hearsay."

Thus, the hearsay rule focuses on the veracity of the out-of-court declarant. *See State v. Manke,* 328 N.W.2d 799, 800 (N.D.1982). The veracity of the in-court witness is subject to the safeguards of an oath and cross-examination, and has no effect upon the admissibility of the out-of-court declarant's statements.

We conclude that Edna's statements were not offered to prove the truth of matters asserted therein, but rather constituted "verbal conduct" which carried independent legal significance. The statements therefore were not hearsay, and their admission did not constitute error.[2]

### III

Everett next contends that the evidence presented by Fern and Virginia was insufficient to overcome the presumption that services rendered by one family member to another family member are gratuitous. The trial court found that Fern and Virginia had rebutted the presumption by proof of both an express and an implied agreement for payment between Fern and Edna, and proof of an implied agreement for payment between Virginia and Edna. These determinations were findings of fact by the trial judge, *Gange v. Gange,* 79 N.D. 372, 56 N.W.2d 688, 690 (1953), and our review is therefore limited to a determination of whether or not these findings were clearly erroneous. Rule 52(a), N.D.R.Civ.P.[3]

Ordinarily, one who performs services for another without an express agreement as to compensation is entitled to the reasonable value of his services. *Skinner v. Clausen,* 219 N.W.2d 161, 163 (N.D. 1974); *Zirnhelt v. Ransom County,* 137 N.W.2d 785, 789 (N.D.1965). Whenever services are rendered by one family member to another, however, a presumption arises that the services are gratuitous and that compensation was not intended. *Krapp v. Krapp,* 47 N.D. 308, 181 N.W. 950, 951 (1921). The burden then shifts to the claimant to rebut the presumption by proof that the services were not gratuitous. Rule 301(a), N.D.R.Ev. This requires proof that the parties expressly or impliedly agreed that the claimant would be compensated. *In re Estate of Thompson,* 191 N.W.2d 578, 580 (N.D.1971); *Bergerson v. Mattern,* 41 N.D. 404, 170 N.W. 877 (1918).

This Court has discussed this presumption on five previous occasions. *In re Estate of Thompson, supra; Gange v. Gange, supra; Brady v. Brady's Estate,* 50 N.D. 114, 194 N.W. 938 (1923); *Krapp v. Krapp, supra; Bergerson v. Mattern, supra.* Each of these cases, with the exception of *Krapp,* involved children claiming compensation for services against a parent's estate. In *Krapp,* a daughter-in-law was claiming compensation for services against her father-in-law's estate. In all five cases, this Court focused on the nature of the services performed to determine whether or not the proof established an implied agreement for compensation. Only where the services were of a particularly extraordinary nature did the Court find that the presumption had been overcome.

We have not had a previous opportunity to discuss the effect of this presumption when applied to siblings, rather than parent

---

**2.** For other examples of statements which we have held to be non-hearsay because offered to prove a fact other than the matter asserted therein, *see State v. Schimetz,* 328 N.W.2d 808, 814 (N.D.1982); *Gerhardt v. D.L.K.,* 327 N.W.2d 113, 115 (N.D.1982); *State v. Jensen,* 251 N.W.2d 182, 188–89 (N.D.1977).

**3.** During oral argument, counsel for Everett asserted that Rule 52(a) is inapplicable to probate proceedings in county court under Title 30.1. He did not cite any authority in support of this assertion. Section 30.1–02–04, NDCC, provides:

"*Practice in court.*—Unless specifically provided to the contrary in this title or unless inconsistent with its provisions, the rules of civil procedure, including the rules concerning vacation of orders and appellate review, govern formal proceedings under this title." We are unaware of any provision declaring Rule 52(a) inapplicable in probate proceedings. Furthermore, we note that Rule 52(a) was applied in probate proceedings in county court prior to enactment of the Uniform Probate Code, Title 30.1. *See, e.g., In re Estate of Rask,* 214 N.W.2d 525, 530–31 (N.D.1974); *In re Estate of Elmer,* 210 N.W.2d 815, 819 (N.D.1973).

and child. Counsel for Fern and Virginia urge us to adopt the position, prevalent in various other jurisdictions, that the presumption of gratuitousness grows weaker as the degree and nature of the family relationship becomes more remote.[4] Although we agree in principle with the effect of this position, the concept of "stronger" and "weaker" presumptions does not fit well within the framework of Rule 301(a), N.D.R.Ev. Rule 301(a) adopts the view that a presumption imposes upon the party against whom it is directed the burden of proving that the fact presumed does not exist. *See* Explanatory Note, Rule 301, N.D.R.Ev. The burden is shifted, regardless of the "strength" of the presumption.

■ Rather than affecting the "strength" of the presumption, the degree and nature of the family relationship are factors which may be considered in determining whether or not an implied agreement for compensation existed.[5] Thus, the court in the instant case was justified in taking into consideration the fact that the claimants and decedent were sisters who had lived apart for many years, and that each had her own separate family life. This fact, coupled with the other testimony presented, established to the court's satisfaction that an implied agreement for compensation existed.

■ We note that our earlier decisions which have discussed the presumption were based almost entirely on the nature of the

services provided. The examination need not be so limited; the court should take into consideration *all* of the surrounding facts and circumstances when determining whether an agreement to pay should be implied. The central question presented in these cases is whether or not, under the facts and circumstances of each particular case, it would reasonably be expected that compensation would be paid. These cases will, of necessity, turn on the particular facts presented therein.

■ We must next determine whether or not the court's findings in this regard were clearly erroneous. On the claim of Fern, the Court found an express agreement for compensation, and went on to note that, under the circumstances, an agreement for compensation could be implied. The court specifically noted the following factors which support its finding of an implied agreement: there was a lack of mutuality of benefits, in that Edna received services from Fern but did not provide any benefit in return; Edna had requested that Fern come and help her; the services provided were exceptional, including extensive nursing care; Edna and Fern did not live together, and Fern was separated from her family for several months while providing services; and Fern was required to resign from her job to devote full attention to Edna.

4. *See, e.g., Keeton v. Bozark,* 232 Ark. 588, 339 S.W.2d 123, 125 (1960); *Shurrum v. Watts,* 80 Idaho 44, 324 P.2d 380, 385 (1958); *Ferris v. Barrett,* 250 Iowa 646, 95 N.W.2d 527, 531 (1959); *In re Houser's Estate,* 178 Neb. 401, 133 N.W.2d 618, 622 (1965); *Cotton v. Roberts' Estate,* 47 Tenn.App. 277, 337 S.W.2d 776, 780 (1960).

Other jurisdictions have gone further, holding that the mere blood relation existing between siblings is insufficient to raise the presumption unless they are living together as a family. *See, e.g., In re Herdman's Estate,* 167 Or. 527, 119 P.2d 277, 278 (1941); *In re Joseph's Estate,* 141 F.Supp. 865, 866 (D.C.V.I. 1956); *see generally* Annot., 7 A.L.R.2d 8, § 35 (1949).

A similar result is reached by jurisdictions which hold that the presumption arises only between members of the immediate family, *i.e.* those living in one household under one head

and one domestic government. *See, e.g., Wilhoite v. Beck,* 141 Ind.App. 543, 230 N.E.2d 616, 621 (1967); *In re Tilghman's Estate,* 240 Minn. 494, 61 N.W.2d 743, 746 (1953); *Jaycox v. Brune,* 434 S.W.2d 539, 544 (Mo.1968); *Castor v. Rice,* 71 Wyo. 99, 254 P.2d 189, 191 (1953); *see generally* Annot., 7 A.L.R.2d 8, § 14 (1949).

5. We recognize that this may very well lead to the same result as holding that the presumption grows weaker as the family relationship becomes more remote. We are concerned, however, that such a construction would unnecessarily confuse the theory of presumption which is embodied in Rule 301(a). It is better to say that the presumption unconditionally shifts the burden, and the nature and degree of the relationship are factors to be considered in determining whether or not the claimant has satisfactorily rebutted the presumption.

The circumstances surrounding Virginia's claim are similar. The court noted that Edna and Virginia did not live together, and Virginia was separated from her family while providing services to Edna; Virginia was unable during this period of time to assist in the management and operation of the family farm; the services provided were exceptional, including specialized nursing care; and there was a lack of mutuality of benefits.

We conclude that the findings of fact in this regard are not clearly erroneous.

### IV

■ Finally, Everett contends that there was no evidence presented from which the court could determine a reasonable value for the services provided. Both Fern and Virginia testified as to their opinions of the reasonable value of their services. In *Gange v. Gange, supra,* 56 N.W.2d at 692, we held that "a party seeking to recover for services rendered to a decedent should be permitted to testify to the value of such services, provided that their nature and the fact of their rendition have been first established by competent evidence."

The nature and rendition of the services were clearly established in this case by competent evidence. It was therefore proper for Fern and Virginia to testify as to their opinions of the value of their services. Everett had the opportunity to present evidence that the amounts claimed were not reasonable. The trial court observed the witnesses, heard the arguments of counsel, and placed a value on the services provided by Fern and Virginia. We are not convinced that this finding of fact is clearly erroneous.

The motion to dismiss the appeal is denied. Motion costs are awarded to Fern. The judgments are affirmed.

ERICKSTAD, C.J., VANDE WALLE and SAND, JJ., and PAULSON,* Surrogate Justice, concur.

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section